## UNITED STATES v. FINNEY.

*(District Court, E. D. Missouri, E. D. November Term, 1890.)*

1. FRAUDULENT USE OF THE MAILS—DEPOSITS BY AGENT—MISAPPROPRIATION.
    Under Rev. St. U. S. § 5480, denouncing the use of the mails for fraudulent purposes, a person may be convicted who, representing himself to be the president of a publishing company, falsely pretends by letters and circulars that he desires to employ agents to sell books, when in fact his sole purpose is to induce the agents to make deposits of money, which he intends to appropriate to his own use.

2. SAME—INTENT.
    Defendant's intent is to be determined by inference from all the facts and circumstances in the case, including evidence of his failure to return deposits secured from various persons.

3. SAME—FRAUD—ASSUMED NAME.
    The mere fact that defendant carried on the business under the name of the "Union Publishing Company" is not of itself fraudulent.

At Law. Indictment for using the mails to defraud.

*Geo. D. Reynolds,* U. S. Dist. Atty.

*C. H. Krum* and *D. P. Dyer,* for defendant.

THAYER, J. Gentlemen of the jury, I will read to you the material part of the law upon which this indictment is founded. It is section 5480 of the Revised Statutes of the United States, and the material part is as follows:

"If any person, having devised * * * any scheme to defraud, or be effected by either opening, or intending to open, correspondence or communication with any other person, * * * by means of the post-office establishment of the United States, or by inciting such other person to open communication with the person so devising or intending, shall, in and for

executing such scheme,   *   *   *   place any letter or packet in any post-office of the United States, or take or receive any therefrom, such person, so misusing the post-office establishment, shall be punishable by fine," etc.

Now, to warrant a conviction in this case, there are two leading facts which the prosecution must establish to your satisfaction beyond any reasonable doubt.   In the *first* place, it must be made to appear that at and before the mailing of the letters to A. S. Norfleet and Coy Littrell, mentioned in the indictment, the defendant had devised the scheme to defraud, to be effected by using the mail, that is described in the indictment; and, *secondly*, it must be made to appear that, in execution of such scheme to defraud, the letters to Norfleet and Littrell, described in the indictment, were deposited in the post-office of the United States, at St. Louis, Mo.   The fact that the letters in question were so deposited in the post-office at St. Louis, Mo., by the defendant is admitted, so that practically the only question you have to determine is whether at and before the mailing of the letters in question, the defendant had devised a scheme to defraud such as is described in the indictment, and whether the mailing of the two letters was an act done in execution of such fraudulent scheme.   Now let us see what is the nature of the scheme to defraud, as the same is described in the indictment.   The bill, as I construe it, alleges, substantially, that the scheme consisted of representations made, and to be made, by the defendant, by letters or circulars, through the medium of the United States mail, that he was the president of the Union Publishing Company, and that the publishing company was a manufacturer and publisher of standard subscription books and bibles, for the sale of which it wished to employ agents; the intent of defendant being to induce persons, by means of such representations, to believe that the publishing company desired to employ agents, and that the persons addressed would be employed as such agents, and in consideration thereof to advance to the publishing company the sum of $25 for an agent's outfit, which sum the defendant intended to appropriate, without supplying the outfit or filling such orders as such agents might take. As the scheme is described in the indictment, it is the opinion of the court that, if it is found to be a fraudulent scheme, as charged, it was fraudulent because defendant pretended to desire to employ agents to sell books for the publishing company when in point of fact he had no such desire, and had no intention of filling such orders as they might take after their appointment, but only intended to secure a deposit of $25, and to appropriate the same to his own use.   Hence I charge you to inquire particularly,—*First*, whether the pretense of a desire to employ agents to canvass for the sale of books was in reality a false pretense, made for no other purpose than to induce persons to advance to defendant $25; and, *secondly*, whether defendant's real purpose was to appropriate such moneys to his own use, without rendering any equivalent for the money so received.   If, under the testimony in the case, you answer both of these questions in the affirmative, you will be authorized to find that the scheme was fraudulent, and in that event you may return a verdict of guilty on the first and second counts of the indictment; but

if, on the other hand, you find that the defendant was engaged in the sale of books, and that he in good faith desired to employ agents to increase his sales, and that he intended to fill such orders as they might obtain, then you should acquit the accused. If you find that the defendant was in good faith engaged in the sale of books, and desired to employ agents to increase his sales, as last indicated,—that is to say, if you find that the representation that he was engaged in the sale of books, and desired to employ agents, was an honest and truthful one, made with intent to secure agents, and to fill such orders as such agents might from time to time secure,—then the court instructs you that the defendant is not guilty of a crime merely because he received deposits of money that he did not return, or because he represented that the Union Publishing Company was a manufacturer and publisher of subscription books when such was not the fact, or because he failed to furnish an outfit to Norfleet or Littrell, or to fill orders for books. If the defendant was engaged in the book business, he had a perfect right to make such contracts with agents as he deemed proper, if the same were mutually agreed upon by the parties, and he had a perfect right to ask for a deposit, and to agree as to the circumstances and conditions under which it should be returned.

You will therefore regard all the evidence which the court has admitted touching the deposit of money by various persons, and defendant's failure to return the same, and touching his failure to supply outfits and books, and the evidence concerning his dealings with other agents than Norfleet and Littrell, as having been admitted by the court solely for the purpose of enabling you to determine intelligently whether the defendant was carrying on business as a book-dealer in good faith or in bad faith, that is to say, whether he was carrying on business merely as a means of obtaining deposits by agents, which he intended to convert to his own use, without rendering any equivalent; and you must determine what the defendant's intent was in this regard by inference from all the facts and circumstances in the case that have been proven to your satisfaction. In this connection I will say, gentlemen, that it was not fraudulent for the defendant to carry on business under the name of the "Union Publishing Company" rather than in his own name; in other words, he had a perfect right, if he saw fit, to carry it on under that name. There was nothing wrong in that act, considered by itself. And in conclusion I will add that the presumption of law is that the defendant is innocent of the fraudulent intent imputed to him, and is also innocent of the crime imputed to him; hence the prosecution must prove the fraudulent intent imputed to him, and the crime, beyond any reasonable doubt. If it has failed to prove the offense with such degree of certainty, you will of course acquit the accused, or if, upon a fair consideration of all the testimony, you entertain a reasonable doubt of his guilt, you must give him the benefit of such doubt, and return a verdict of "not guilty." In any event, you will render a verdict of not guilty on the third count of the indictment. The court is of the opinion, for reasons unnecessary to be stated, that you should not find a verdict of guilty on the third count, whatever you may do with the other counts.

I have been asked to charge the jury "that the contract read in evidence between the Historical Publishing Company and the defendant, Finney, is a contract of sale, made, from every legal stand-point, on the basis of money paid by the company to the defendant." I have no objection, gentlemen, to stating to you that such is the case. There is no doubt that the contract in question was made upon a perfectly valid consideration.

The substance of what I have said I have reduced to writing, and you may take it to the jury-room, also the indictment.